Civil Action No. 4:26-cv-04380

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

---

In re: Rosslyn2016 LLC, et al., *Debtors*.

---

On Appeal from the United States Bankruptcy Court
for the Southern District of Texas, Houston Division
Case No. 25-34507, Chief Bankruptcy Judge Eduardo V. Rodriguez, Presiding

---

# Brief of Appellee

---

**PORTER HEDGES LLP**
Aaron J. Power (TX Bar No. 24058058)
apower@porterhedges.com
Jordan T. Stevens (TX Bar No. 24106467)
jstevens@porterhedges.com
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6295

***ATTORNEYS FOR APPELLEE***
***ALLISON D. BYMAN, CHAPTER 7 TRUSTEE***

## RULE 8012 CORPORATE DISCLOSURE STATEMENT

The debtors in the underlying bankruptcy case are three Texas limited liability companies. According to the documents filed in the bankruptcy case prior to conversion, each of the debtors is 100% owned by Appellant, Dr. Fercan E. Kalkan.

## STATEMENT REGARDING ORAL ARGUMENT

The Trustee respectfully submits that oral argument is unnecessary. The dispositive questions (appellate standing and whether the Bankruptcy Court abused its discretion in approving a settlement after an evidentiary hearing) are governed by settled Fifth Circuit law and can be decided on the briefs and the record. Fed. R. Bankr. P. 8019(b). To the extent the Court believes oral argument is warranted or otherwise decides to schedule oral argument, the Trustee will participate.

# TABLE OF CONTENTS

Rule 8012 Corporate Disclosure Statement ........ i

Statement Regarding Oral Argument ........ ii

Table of Contents ........ iii

Table of Authorities ........ v

Statement of Jurisdiction ........ 1

Statement of Issues ........ 1

Standard of Review ........ 2

Statement of the Case ........ 3

I. The Chapter 7 Cases ........ 3

II. The Settlement ........ 4

III. The Appeal ........ 7

Summary of the Argument ........ 7

Argument ........ 8

I. This Appeal Must Be Dismissed ........ 8

A. Kalkan's Lack of Standing Is Fatal to His Appeal ........ 8

B. Kalkan's Failure to Include a Single Record Citation Requires Dismissal ........ 10

II. The Settlement Order Does Not Deal with Non-Estate Property ........ 12

III. The Bankruptcy Court Properly Exercised Its Discretion to Enter the Settlement Order ........ 14

A. The Probability of Achieving a Meaningful Success in the Adversary Proceedings Was Slight ........ 15

1. Only Recission Justified Pursuit of the Adversary Proceedings, but the Estate's Inability to Tender the Full Amount Owed Made that Remedy Unavailable ........ 16

2. Kalkan Offered No Evidence Supporting His Claim that the Claims Against Morgan Stanley Were Worth $20 Million ........ 19

B. The Complexity, Expense, and Likely Duration of Litigation Weighed in Favor of the Settlement ........ 20

C. The Settlement Agreement Confers Significant Value to the Estates and Furthers Chapter 7's Primary Goal of Making Distributions to Unsecured Creditors ........ 21

1. Kalkan Has Not Demonstrated the Bankruptcy Court Erred by Failing to Apply a Setoff to Morgan Stanley's Claims ....... 21

2. The Contingent Nature of Morgan Stanley's Release Does Not Render It Valueless ........ 22

3. Kalkan's Preoccupation with the Amount of the Settlement Payment Misconstrues the True Value of the Settlement Agreement ........ 25

IV. The Bankruptcy Court Went Out of Its Way to Afford Kalkan Due Process ........ 27

Conclusion ........ 28

Certificate of Compliance ........ 29

Certificate of Service ........ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 9 Hous. LLC*,
578 B.R. 600 (Bankr. S.D. Tex. 2017) ....................24

*In re Age Ref., Inc.*,
801 F.3d 530 (5th Cir. 2015) ....................23

*Akkineni v. Firstservice Residential Tex., Inc.*,
2026 WL 870412 (E.D. Tex. Mar. 30, 2026) ....................11

*In re ASARCO LLC*,
2009 WL 8176641 (Bankr. S.D. Tex. June 5, 2009) ....................14

*BAPA Brooklyn 2004, LLC v. Michael A. & Maria D. Twiehaus Revocable Living Tr.*,
2022 WL 2526975 (Tex. App.—Dallas July 7, 2022, no pet.) ....................18

*In re Cajun Elec. Power Coop., Inc.*,
119 F.3d 349 (5th Cir. 1997) ....................14

*Carter v. Bayview Loan Serv. LLC*,
2019 WL 3254705 (S.D. Tex. June 11, 2019) ....................18

*Carter v. PennyMac Loan Servs., L.L.C.*,
2022 WL 17817953 (5th Cir. Dec. 20, 2022) (unpublished) ....................17

*In re Cooper*,
405 B.R. 801 (Bankr. N.D. Tex. 2009) ....................18

*In re Dennis*,
330 F.3d 696 (5th Cir. 2003) ....................2

*In re Derosa-Grund*,
567 B.R. 773 (Bankr. S.D. Tex. 2017) ....................9, 14

*Donovan v. Road Rangers Country Junction, Inc.*,
736 F.2d 1004 (5th Cir. 1984) (per curiam) ....................10

*In re Emerald Oil Co.*,
807 F.2d 1234 (5th Cir. 1987) ....................................................................2

*Farrell v. Hunt*,
714 S.W.2d 298 (Tex. 1986) ....................................................................17

*Fillion v. David Silvers Co.*,
709 S.W.2d 240 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ....................................................................17

*In re Foster Mortg. Corp.*,
68 F.3d 914 (5th Cir. 1995) ....................................................................2

*In re GNI Grp., Inc.*,
402 B.R. 195 (S.D. Tex. 2008) ....................................................................3

*In re Hancock-Nelson Mercantile Co., Inc.*,
95 B.R. 982 (Bankr. D. Minn. 1989) ....................................................................24

*Hanks v. Gulf, Colo. & Santa Fe Ry. Co.*,
320 S.W.2d 333 (Tex. 1959) ....................................................................19

*Hill v. Wells Fargo Bank, N.A.*,
2012 WL 2065377 (S.D. Tex. June 6, 2012) ....................................................................18

*In re Jackson Brewing Co.*,
624 F.2d 599 (5th Cir. 1980) ....................................................................2, 15

*Krieg v. Sullivan*,
2026 WL 2839399 (S.D. Tex. Sept. 22, 2026) (Hanks, J.) ....................................................................12

*Lambert v. First Nat'l Bank of Bowie*,
993 S.W.2d 833 (Tex. App.—Fort Worth 1999, pet. denied) ....................................................................18

*Lee v. Lee*,
47 S.W.3d 767 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ....................................................................19

*McCoy v. United States*,
2019 WL 1084211 (S.D. Tex. Mar. 7, 2019) (Hanks, J.) ....................................................................11

*In re Mirant Corp.*,
348 B.R. 725 (Bankr. N.D. Tex. 2006). Bankruptcy ....................................................................23

*In re Moore*,
608 F.3d 253 (5th Cir. 2010) ....................................................................25

*Rabinowitz v. Fed. Home Loan Mortg. Corp.*,
2012 WL 12904704 (S.D. Tex. Sept. 25, 2012)...............................................18

*In re Ramba, Inc.*,
416 F.3d 394 (5th Cir. 2005) ......................................................................2

*In re Refco Inc.*,
505 F.3d 109 (2d Cir. 2007) .......................................................................9

*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021) .......................................................................26

*Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*,
506 U.S. 194 (1993)..................................................................................10

*Saravia v. Benson*,
433 S.W.3d 658 (Tex. App.—Houston [1st Dist.] 2014, no pet.)......................17

*In re Selander*,
2017 WL 1157101 (Bankr. W.D. Wash. Mar. 24, 2017) .................................24

*In re ServiSense.com, Inc.*,
382 F.3d 68 (1st Cir. 2004).................................................................14, 23

*In re State Park Bldg. Grp., Ltd.*,
331 B.R. 251 (Bankr. N.D. Tex. 2005).........................................................19

*In re Tresha-Mob, LLC*,
2019 WL 1785431 (Bankr. W.D. Tex. Apr. 3, 2019) .......................................25

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,
504 F.2d 518 (5th Cir. 1974) ......................................................................19

*Waggoner v. Deutsche Nat'l Bank Tr. Co.*,
181 F. Supp. 3d 445 (S.D. Tex. 2016)..........................................................18

*Willoughby v. Jones*,
251 S.W.2d 508 (Tex. 1952) .......................................................................17



18730584

**Statutes**

11 U.S.C. § 322 .......................................................................................... 18

11 U.S.C. § 554 .......................................................................................... 24

28 U.S.C § 158 .......................................................................................... 1

28 U.S.C. § 1334 .......................................................................................... 1

**Other Authorities**

Fed. R. Bankr. P. 8014 .............................................................. 10, 11, 12

Fed. R. Bankr. P. 9019 .............................................................. 2, 13, 14

Allison D. Byman, chapter 7 trustee (the "Trustee") and appellee in this case, by and through her undersigned counsel, respectfully submits this brief in opposition to the appeal of Dr. Fercan E. Kalkan ("Kalkan").

## STATEMENT OF JURISDICTION

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §1334(a)–(b). On May 21, 2026, the Bankruptcy Court entered the *Order (I) Authorizing and Approving Settlement Agreement, and (II) Granting Related Relief* (ROA.007724–62) (the "Settlement Order"), which approved the settlement agreement (the "Settlement Agreement") for which the Trustee sought approval by the *Trustee's Amended Motion for Approval of and Authority to Compromise Pursuant to Bankruptcy Rule 9019* (ROA.002944–98) (the "Settlement Motion"). Subject to the *Trustee's Motion to Dismiss Appeal for Lack of Standing* (ECF # 5), this Court has appellate jurisdiction pursuant to 28 U.S.C §158(a)(1).[1]

## STATEMENT OF ISSUES

(1) Whether an appeal should be dismissed where the appellant (a) is not a party in interest with respect to the relevant order, (b) makes arguments based on the rights of third parties, and (c) fails to include a single reference to the appellate record in his opening Brief?

(2) Whether the Bankruptcy Court correctly concluded that approval of the Settlement Agreement as modified by the Settlement Order was in the best interest of the Estates?

[1] References to Kalkan's *Brief of Appellant Dr. Fercan E. Kalkan* (ECF # 8) (Kalkan's "Brief") are cited as "Br. at ___".

## STANDARD OF REVIEW

Whether to approve a compromise under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") has long been left to the sound discretion of the bankruptcy court, and reviewing courts may not "retry the controversy de novo nor rejudge matters for the trial judge." *In re Jackson Brewing Co.*, 624 F.2d 599, 602–03 (5th Cir. 1980). This is because "[a] bankruptcy court is ordinarily in the best position, as the trial court and as the ongoing supervisory court for the bankruptcy proceeding, to determine whether a compromise is in the best interest of the estate and 'fair and equitable.'" *In re Emerald Oil Co.*, 807 F.2d 1234, 1239 (5th Cir. 1987) (citation omitted). Thus, the Fifth Circuit cautions that "the standard for reviewing a bankruptcy court's approval of a compromise is a high one." *Id*.

In determining whether a bankruptcy court abused its discretion in approving a settlement, conclusions of law are subject to *de novo* review but factual findings may not be set aside unless they are "clearly erroneous." *See In re Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995) (citation omitted). A factual finding is clearly erroneous "only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (citation omitted). Stated differently, a "factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba*,

*Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). "'As long as there are two permissible views of the evidence,' the Bankruptcy Court's 'choice between competing views' is not clearly erroneous." *In re GNI Grp., Inc.*, 402 B.R. 195, 199 (S.D. Tex. 2008) (citation omitted).

## STATEMENT OF THE CASE

### I. The Chapter 7 Cases

Rosslyn2016 LLC; Texas Esencia 2019 LLC; and Timbers2020 LLC (collectively, the "Debtors") are three affiliated single-asset real estate entities that are commonly owned by Kalkan. (ROA.004775, 4797, 4816, 10833).

On August 4, 2025 (the "Petition Date"), several purported creditors commenced chapter 11 cases (the "Chapter 11 Cases") by filing involuntary chapter 11 petitions against each Debtor. *See In re Rosslyn2016 LLC*, No. 25-34507; *In re Texas Esencia 2019 LLC*, No. 25-34508; *In re Timbers2020 LLC*, No. 25-34510. (ROA.004774, 4796, 4815).

Thereafter, the Bankruptcy Court entered an order for relief and procedurally consolidated the Chapter 11 Cases. (ROA.000046–47, 12089). On January 8, 2026, the Bankruptcy Court granted a motion to convert, ordering that the chapter 11 cases be converted to cases under chapter 7 (the "Chapter 7 Cases") and directing the United States Trustee to appoint a trustee. (ROA.002802–07). The United States

Trustee then appointed the Trustee as the chapter 7 trustee in each of the Chapter 7 Cases. (ROA.000036).

After her appointment, the Trustee discovered that the Debtors' estates (collectively, the "Estates") had no cash with which to pay administrative expenses, pursue litigation, or make distributions to creditors. (ROA.012316).

## II. The Settlement

Prior to the Petition Date, the Debtors (under Kalkan's control) initiated several lawsuits against Morgan Stanley Private Bank, National Association ("Morgan Stanley") in Texas state court (collectively, the "State Court Lawsuits"), alleging claims for wrongful foreclosure. (ROA.000072–104). After the chapter 11 cases were filed, Morgan Stanley removed the State Court Lawsuits to the Bankruptcy Court, beginning eight different adversary proceedings (collectively, the "Adversary Proceedings"). (ROA.000057–70, 557–70, 1351–64, 1861–74, 1986–99, 2100–13).

The Trustee analyzed the Debtors' wrongful foreclosure and related claims against Morgan Stanley pending in the Adversary Proceedings. The Trustee concluded that the claims had little to no chance of success. (ROA.012319–22).

The Trustee also analyzed the Debtors' pending insurance claims (the "Insurance Claims") made in connection with real properties owned by the Debtors (collectively, the "Properties"). (ROA.012317–18). The Trustee concluded that the

Insurance Claims had a strong likelihood of a recovery and could be pursued on a contingency fee basis. (ROA.012318). However, Morgan Stanley continued to hold a lien against the Insurance Claims, which secured significant deficiency claims resulting from the foreclosures of the Properties. (ROA.007468, 8257–62). Therefore, it was unlikely unsecured creditors would receive anything absent a compromise with Morgan Stanley. (ROA.012318–19).

On February 26, 2026, the Trustee filed the Settlement Motion, which sought approval to enter into the Settlement Agreement with Morgan Stanley, which provided in pertinent part: (i) Morgan Stanley would make a settlement payment of $150,000.00 to the Debtors (the "Settlement Payment"); (ii) Morgan Stanley would subordinate its liens on proceeds of the Debtors' insurance claims; (iii) Morgan Stanley's deficiency claims under the Loan Agreements (as defined in the Settlement Motion) would be treated as general unsecured claims that would entitle Morgan Stanley to a pro rata share of distributions to general unsecured creditors; (iv) the Trustee would release the Debtors' claims and derivative claims against Morgan Stanley, including the wrongful foreclosure claims in the Adversary Proceedings; and (v) all parties would be enjoined from bringing the Estates' claims that were released pursuant to the Settlement Agreement. (ROA.002944–98).

Kalkan filed several objections to the Settlement Motion (the "Kalkan Objections"). (ROA.003923–33, 3943–52, 5568–73). His principal contentions

were that the settlement undervalued the Estates' claims against Morgan Stanley, improperly allowed Morgan Stanley's general unsecured claims, and improperly enjoined what he framed as his personal claims against Morgan Stanley. (ROA. 003927–31, 3945–47). At the time of the entry of the Settlement Order, Kalkan asserted that he had a personal claim for wrongful foreclosure as equity owner in the Debtors and as a personal guarantor of the Debtors' loan obligations to Morgan Stanley. Kalkan has also asserted at various times additional allegations he describes as "independent, non-derivative" claims, including claims arising from Morgan Stanley's alleged seizure of funds, claims under personal guarantees, and tort claims based on conduct purportedly directed at him personally. (ROA.003927–31, 3947).

The Bankruptcy Court held several hearings on the Settlement Motion before eventually entering the Settlement Order. (ROA.000024–25, 27–28).

The Settlement Order approved the Settlement Agreement in large part but did effect some changes to the overall structure. (ROA.007724). For instance, the Bankruptcy Court struck language that would have required Kalkan to seek approval from the Bankruptcy Court prior to filing claims related to the Properties against parties that were released under the Settlement Agreement. (ROA.007728). In fact, the Settlement Order expressly states that no party was enjoined from asserting any claims against Morgan Stanley provided that such claims were not property of the Estates or derivative claims thereof. (ROA.007728).

### III. The Appeal

On May 29, 2026, Kalkan filed a notice of appeal to this Court with respect to the Settlement Order.

On July 7, the Trustee filed the *Trustee's Motion to Dismiss Appeal for Lack of Standing* (ECF # 5) (the "Motion to Dismiss"), which remains pending.

## <u>SUMMARY OF THE ARGUMENT</u>

The Court should dismiss this appeal based on Kalkan's lack of standing without the need to reach the merits. If the Court disagrees and determines that Kalkan has bankruptcy appellate standing, the Bankruptcy Court's ruling should be affirmed because the Settlement Order was entered following two days of hearing during which the only evidence admitted into the record supports the Trustee's business judgment to enter into the settlement with Morgan Stanley. Kalkan made no factual record to support any of his arguments, which is reflected in the absence of citations to the record on appeal in his Brief.

Kalkan's complaint that the Settlement Order impairs his individual rights is simply incorrect and ignores the plain language of the Settlement Order. In fact, the Bankruptcy Court struck a gatekeeper injunction from the Settlement Order before approving the compromise. Kalkan's argument that the Settlement Order should be reversed because it undervalues the wrongful foreclosure claims against Morgan Stanley finds no support in the record, misconstrues the potential value of the

settlement to the Estates (i.e., several million dollars in insurance proceeds), and ignores the practical realities of pursuing such claims due to lack of funds.

For the reasons set forth herein, the Trustee requests this Court either dismiss the appeal or affirm the Settlement Order for the reasons set forth by the Bankruptcy Court.

## ARGUMENT

### I. This Appeal Must Be Dismissed

The Court does not need to address the merits of this appeal and should instead dismiss the appeal because (i) Kalkan's position as the equity owner of the Debtors does not give him standing to appeal the Settlement Order, and (ii) Kalkan failed to include a single citation to the record on appeal.

#### A. Kalkan's Lack of Standing Is Fatal to His Appeal

Kalkan's lack of standing has already been briefed in detail in the Trustee's Motion to Dismiss filed in response to Kalkan's notice of appeal. As argued in that Motion to Dismiss, Kalkan lacks standing to appeal the Settlement Order because (i) he is not a party in interest who can complain that the Settlement Order is not in the Estates' best interest, and (ii) the Settlement Order does not impair his individual claims or rights. *See, e.g.*, Motion to Dismiss ¶¶ 20–22, 24–25. Rather than addressing the fundamental flaws identified by the Motion to Dismiss, Kalkan's Brief raises new arguments that he also lacks standing to make. Specifically, Kalkan contends that the Settlement Order improperly deals with the property of an



18730584

unnamed non-debtor affiliate. Br. at 7. Setting aside that this is simply incorrect (which will be demonstrated below), Kalkan does not have standing to raise this issue.

To object to a settlement or appeal an order approving one, a party must have standing. *See, e.g.*, Motion ¶¶ 16, 18. This means an objector must not be asserting the rights of third parties. *See In re Derosa-Grund*, 567 B.R. 773, 782–83 (Bankr. S.D. Tex. 2017) (observing that a party's prudential standing "may be defeated if . . . it is asserting a third party's rights" (citation omitted)); *accord In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else.").

For the first time on appeal, Kalkan now (incorrectly) argues that the insurance proceeds belong to another entity. *See, e.g.*, Br. at 6. Even if true, only that entity can make that argument and that entity did not object and raise the issue before the Bankruptcy Court. *See Refco*, 505 F.3d at 117–19 (holding that an entity's investors lacked standing to object to a settlement on the grounds that the settlement was unfair to the entity and its investors). The only testimony on this issue was from the insurance adjuster who clarified that this was an umbrella policy covering numerous real properties, but that each property has a specific deductible, there would be three separate payments to the Debtors, and the Trustee can settle the

insurance claims for just the three Debtors without a global settlement on other non-debtor properties covered by the umbrella policy. (ROA.008224–25, 8250–52).

Moreover, even if Kalkan owns or controls that entity, Kalkan could not have objected to the settlement on behalf of that entity (and therefore his objections cannot be construed as that entity's objections) because under well-established law, a corporation or other artificial entity cannot appear in federal court unless it is represented by counsel. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel."); *Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984) (per curiam) (explaining that "the 'clear' rule is 'that a corporation as a fictional legal person can only be represented by licensed counsel'" (citation omitted)).

Accordingly, the appeal should be dismissed for lack of standing based on the arguments set forth in the pending Motion to Dismiss and the fact that Kalkan cannot raise new arguments on behalf of an entity that is not a party to this appeal and was not a party to the underlying proceeding in Bankruptcy Court.

### B. Kalkan's Failure to Include a Single Record Citation Requires Dismissal

Kalkan's Brief does not contain a single reference to the record on appeal. But under Bankruptcy Rule 8014(a), he was required to submit a brief containing a

"concise statement of the case . . . *with appropriate references to the record*" and an "argument . . . *with citations to the authorities and parts of the record on which the appellant relies*." Fed. R. Bankr. P. 8014(a)(6), (8) (emphasis added). This Court has held that Bankruptcy Rule 8014(a) "is not only a technical or aesthetic provision, but also has a substantive function—that of providing the other parties and the [C]ourt with some indication of which flaws in the appealed order or decision motivate the appeal." *McCoy v. United States*, 2019 WL 1084211, at *3 (S.D. Tex. Mar. 7, 2019) (Hanks, J.) (citation omitted); *see also id.* (finding that the appellant's failure to include a "single citation to the record" in her brief "burden[ed] this [C]ourt with searching for and often guessing as to which parts of the record are relevant to [the appellant's] arguments" and constituted a "clear violation" of Bankruptcy Rule 8014(a)(8)).

Indeed, courts—the present one included—routinely hold that violations of Bankruptcy Rule 8014(a) are fatal. *See, e.g.*, *id.* (finding a violation of Bankruptcy Rule 8014(a) and stating, "For that reason alone, [the] appeal fails." (citation omitted)); *Akkineni v. Firstservice Residential Tex., Inc.*, 2026 WL 870412, at *1 (E.D. Tex. Mar. 30, 2026) (dismissing pro se party's appeal for failure to comply with Bankruptcy Rule 8014(a)).

And while Kalkan may be proceeding *pro se*, that does not relieve him of his Bankruptcy Rule 8014(a) obligations. *See Akkineni*, 2026 WL 870412, at *2 & n.3

("The fact that [appellant] proceeded pro se does not save him. . . . 'The rules of procedure and the rules governing bankruptcy proceedings apply equally to everyone.'" (citation omitted)); *accord Krieg v. Sullivan*, 2026 WL 2839399, at *4 (S.D. Tex. Sept. 22, 2026) (Hanks, J.) ("Despite our general willingness to construe *pro se* filings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts." (citation omitted)).

Therefore, the appeal should be dismissed due to a failure to comply with Bankruptcy Rule 8014(a).

## II. The Settlement Order Does Not Deal with Non-Estate Property

Although not a model of clarity, Kalkan's Brief seems to make two arguments regarding his individual claims. First, he complains that the Settlement Agreement reaches his direct, non-derivative claims. Br. at 7. However, this concern is completely unfounded because the Settlement Order clearly and unequivocally preserved any of Kalkan's direct, non-derivative claims against Morgan Stanley as follows:

> For the avoidance of doubt and notwithstanding anything to the contrary in this Order or the Settlement Agreement, no creditor or other non-Debtor party shall be barred or enjoined from (a) asserting against any Morgan Stanley Released Party any claim, liability, obligation, defense, or cause of action that (i) is not property of any of the Debtors' estates or derivative of a claim or cause of action that is property of any of the Debtors' estates, (ii) is based on an independent legal duty owed by a Morgan Stanley Released Party to such creditor or other non-Debtor party, and (iii) may be asserted by such creditor or other non-Debtor party directly against any of the Morgan Stanley Released

> Parties under applicable non-bankruptcy law (each, a "Direct Third Party Claim"), or (b) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against any Morgan Stanley Released Party on account of or in connection with or with respect to any Direct Third Party Claim.

(ROA.007728).

Kalkan's request that the Settlement Order clarify that it does not release his direct, non-derivative claims has already been fulfilled.

Second, Kalkan contends that the insurance proceeds belong either to (1) him personally rather the Debtors who owned the Properties (without citation to any authority or the record), or (2) a non-debtor affiliate named in the blanket insurance policy covering the Properties as well as numerous properties owned by non-debtors. Br. at 4, 6–7. According to Kalkan, the Settlement Order was entered in error because "[t]he Trustee cannot, by Rule 9019, sell, settle, or release the property of a non-debtor." Br. at 6–7. Therein lies a fundamental flaw in Kalkan's argument: the Settlement Order did not actually dispose of the insurance proceeds. Under the Settlement Order, Morgan Stanley simply agreed that its liens "would not encumber the Estates' right to any insurance recoveries" and that "to the extent the proceeds of insurance recoveries" are distributed to unsecured creditors, Morgan Stanley would share pro rata. (ROA.007769). In other words, *there was no sale, transfer, or release of the insurance proceeds*.

## III. The Bankruptcy Court Properly Exercised Its Discretion to Enter the Settlement Order

Bankruptcy Rule 9019(a) authorizes bankruptcy courts to approve compromises that are "fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) (citation omitted); *see* Fed. R. Bankr. P. 9019(a). The Fifth Circuit instructs bankruptcy courts to consider various factors in exercising this authority: (a) the probability of success in the litigation, with due consideration for uncertainty in fact and law; (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (c) all other factors bearing on the wisdom of the compromise. *See Cajun Elec.*, 119 F.3d at 356 (citation omitted).

The compromise need only fall "within the range of reasonable litigation alternatives." *Derosa-Grund*, 567 B.R. at 785 (citation omitted); *see also In re ASARCO LLC*, 2009 WL 8176641, at *9 (Bankr. S.D. Tex. June 5, 2009). The Bankruptcy Court "is not to decide the numerous questions of law and fact raised" by the compromise, but, instead, is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re ServiSense.com, Inc.*, 382 F.3d 68, 71–72 (1st Cir. 2004) (citations omitted). Approval of a compromise is within the sound discretion of the bankruptcy court, and the Fifth Circuit warns reviewing courts to "remember that compromises are 'a

normal part of the process of reorganization.'" *Jackson Brewing Co.*, 624 F.2d at 602–03 (citation omitted).

The Bankruptcy Court here did precisely what it was supposed to. It received objections to the Settlement Motion; received evidence and witness testimony, including to the Court's own questions; heard argument; and ultimately approved the Settlement Agreement with the modifications that the Bankruptcy Court determined appropriate. (ROA.008319–21). This is a far cry from the sort of "rubberstamping" that might justify reversal but instead reveals that the bankruptcy judge considered the appropriate factors, reviewed the evidence, and applied the proper legal standards.

The record fully supports the Bankruptcy Court's conclusion that entry of the Settlement Order was appropriate.

### A. The Probability of Achieving a Meaningful Success in the Adversary Proceedings Was Slight

In the Adversary Proceedings, the Debtors principally alleged claims for wrongful foreclosure seeking recission of foreclosure sales of the Properties to TL-1. (ROA.000072–104). Although the Debtors alleged various procedural flaws in the foreclosure process, the primary thrust of the Adversary Proceedings was that the Properties had been sold for significantly less than their fair market value based on sale negotiations that were allegedly taking place at the time of the foreclosures. The Trustee carefully analyzed these claims but determined that she faced serious

headwinds to achieving a meaningful victory. (ROA.012319–22). Kalkan never provided any arguments or evidence that alleviated these concerns.

Although Kalkan's Brief does not challenge this aspect of the Settlement Order, a review of the proceedings below illustrates that the Bankruptcy Court properly applied the first factor in entering the Settlement Order.

**1. Only Recission Justified Pursuit of the Adversary Proceedings, but the Estate's Inability to Tender the Full Amount Owed Made that Remedy Unavailable**

In objecting to the Settlement Motion, Kalkan insisted that the Estates' claims against Morgan Stanley were worth $20 million or more, representing the delta between his alleged value of the properties and the foreclosure sale prices. However, Kalkan introduced zero evidence into the record regarding the value of the Properties. There was no testimony from a potential buyer, and no expert testimony from an appraiser. The Debtors' attorney, retained by Kalkan, told the Trustee that she thought the claims against Morgan Stanley were worth only $2 million to $3 million, less than the value of insurance claims. (ROA.005957–58, 12332–34). Kalkan also failed to account for the circumstances of the Chapter 7 Cases and the nature of Morgan Stanley's claims.

Prior to the foreclosures of the Properties, Morgan Stanley's secured claims were approximately $53,500,000 under the Loan Agreements. (ROA.05288–305, 5307–88, 5390–471). Any monetary recovery below the full amount of Morgan

Stanley's secured claims would serve only to reduce those secured claims, which would not produce a benefit to the Debtors' other creditors proportionate to the administrative costs. This would require expensive litigation, likely requiring expert testimony, that would not benefit the Debtors' other creditors unless it can be shown that the value of the Properties exceeded the foreclosure sales price (i.e., $37,176,667.03) by at least the full amount owed to Morgan Stanley (i.e., approximately $53,500,000, plus all other fees, expenses and other amounts that were or have become due and owing under the Loan Agreements). *See Farrell v. Hunt*, 714 S.W.2d 298, 299 (Tex. 1986) ("In a wrongful foreclosure suit the measure of damages is the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness.").

Accordingly, the Trustee concluded that recission is the only remedy that would justify pursuit of the Debtors' claims against Morgan Stanley. (ROA.012322). But it is well settled that under Texas law, "[t]ender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title . . .[following] a void foreclosure sale." *Carter v. PennyMac Loan Servs., L.L.C.*, 2022 WL 17817953, at *1 (5th Cir. Dec. 20, 2022) (unpublished) (citation omitted).[2] "Under Texas law, to be entitled to have a foreclosure sale set aside, a

[2] *See also, e.g., Willoughby v. Jones*, 251 S.W.2d 508, 509–10 (Tex. 1952) (holding that tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale);

plaintiff must actually tender, not just offer to tender, the full amount owed on the note." *Carter v. Bayview Loan Serv. LLC*, 2019 WL 3254705, at *5 (S.D. Tex. June 11, 2019).[3]

It was immediately apparent to the Trustee that given the Estates' dire financial condition, she could not hope to be able to tender the amount necessary for an award of recission, even if Kalkan was correct as to the merits. (ROA.012322). "The trustee . . . is expected to be a gatekeeper and to exercise his reasonable business judgment in deciding what actions to bring and what are not worth the expense. . . . [T]he trustee is a fair, balanced, and experienced (not to mention bonded, *see* 11 U.S.C. § 322) official who can be depended upon to exercise good litigation judgment." *In re Cooper*, 405 B.R. 801, 812 (Bankr. N.D. Tex. 2009).

---

*Saravia v. Benson*, 433 S.W.3d 658, 663 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (same); *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (same).

[3] *See also Waggoner v. Deutsche Nat'l Bank Tr. Co.*, 181 F. Supp. 3d 445, 449 (S.D. Tex. 2016) ("To be entitled to rescission of a foreclosure sale, Plaintiffs must allege that they have tendered the full amount due and owing under the loan."); *Rabinowitz v. Fed. Home Loan Mortg. Corp.*, 2012 WL 12904704, at *3 (S.D. Tex. Sept. 25, 2012) ("[I]n order to be entitled to have a foreclosure sale set aside in Texas, a plaintiff must actually tender—not just offer to tender—the full amount owed on the note."); *Hill v. Wells Fargo Bank, N.A.*, 2012 WL 2065377, at *9 (S.D. Tex. June 6, 2012) (same); *BAPA Brooklyn 2004, LLC v. Michael A. & Maria D. Twiehaus Revocable Living Tr.*, 2022 WL 2526975, at *2 (Tex. App.—Dallas July 7, 2022, no pet.) ("When a party seeks to set aside or cancel a foreclosure sale, the mortgagor must tender the amounts due and owing under the note and deed of trust."); *Lambert v. First Nat'l Bank of Bowie*, 993 S.W.2d 833, 835–36 (Tex. App.—Fort Worth 1999, pet. denied) ("In order to be entitled to recission, [plaintiff] was required to actually tender the amounts due.").

And given the blackletter law on recission and the circumstances of the Debtors' estates, the Trustee concluded it was not available and that the claims against Morgan Stanley were therefore not worth pursuing. (ROA.012322). Kalkan made no arguments and offered no evidence alleviating these concerns, and the Bankruptcy Court did not err in accepting this exercise of the Trustee's business judgment. *See In re State Park Bldg. Grp., Ltd.*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005) ("Great judicial deference is given to the Trustee's exercise of business judgment." (citation omitted)).

### 2. Kalkan Offered No Evidence Supporting His Claim that the Claims Against Morgan Stanley Were Worth $20 Million

Rather than confronting the unavailability of recission, Kalkan focused instead on his unsupported belief that the Estates' claims against Morgan Stanley were worth $20 million or more. (ROA.003943). This was presumably based on his belief that alleged offers (which are not even part of the record) made during sale negotiations for the Properties reflected their fair market value.

However, "Texas courts have long held that unaccepted offers to purchase property are no evidence of market value of property." *Lee v. Lee*, 47 S.W.3d 767, 785 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Hanks v. Gulf, Colo. & Santa Fe Ry. Co.*, 320 S.W.2d 333, 336–37 (Tex. 1959)). The Fifth Circuit is largely in accord, having recognized that "[i]t is clear that as a general rule, unaccepted offers are improper evidence by which to estimate value." *Univ.*

*Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 545 (5th Cir. 1974) (collecting cases). If anything, these inchoate sales are more evidence of what fair market value is not.

More fundamentally, however, Kalkan overlooked that to be worth $20 million to the Debtors' estates, the Properties must have been worth $20 million more than Morgan Stanley's claims (not just the foreclosure price). Kalkan certainly offered no evidence of that, nor did the Trustee have a fiduciary obligation to waste estate resources attempting to develop it.

### B. The Complexity, Expense, and Likely Duration of Litigation Weighed in Favor of the Settlement

Litigating the Adversary Proceedings would be difficult and involve extensive development of facts and intensive briefing. Litigating these disputes made little sense under the circumstances. The Estates have no cash to fund such expensive litigation. (ROA.012316). The Trustee believed that the claims against Morgan Stanley are so weak that she could not get litigation financing or contingency fee counsel to pursue them. (ROA.012319–20).

By entering the Settlement Order, the Bankruptcy Court enabled the Estates to avoid the costs and disruption associated with discovery, dispositive motions practice, trial, and other activities that would accompany any attendant litigation.

### C. The Settlement Agreement Confers Significant Value to the Estates and Furthers Chapter 7's Primary Goal of Making Distributions to Unsecured Creditors

Originally, Morgan Stanley's secured claims were approximately $53,500,000 under the Loan Agreements. (ROA.05288–5305, 5307–88, 5390–471). As a result of the foreclosure sales (that Kalkan insists should be set aside), Morgan Stanley had a deficiency claim of more than $14,000,000 that was secured by a lien on the Estates' insurance claims (and the associated proceeds). (ROA.05288–5305, 5307–88, 5390–471). Under the Settlement Agreement, Morgan Stanley agreed to waive its lien so that the Debtors' other unsecured creditors could receive a portion of the insurance proceeds, with Morgan Stanley sharing in such distributions pro rata. (ROA.007729, 7739–40). Kalkan does not dispute any of that. Instead, he raises three equally unavailing arguments.

#### 1. Kalkan Has Not Demonstrated the Bankruptcy Court Erred by Failing to Apply a Setoff to Morgan Stanley's Claims

Kalkan suggests that the Bankruptcy Court erred because in valuing the release of Morgan Stanley's secured deficiency claims, the Bankruptcy Court failed to consider the $12 million that he contends Morgan Stanley wrongfully took from his personal account. Br. at 7–8.

Kalkan challenges the Settlement Agreement on the grounds that it released his claims against Morgan Stanley relating to this $12 million cash sweep, which he characterizes as "independent, personal claims against Morgan Stanley" that are not

property of the Debtors' estates. If this is true, then how could *the Debtors* treat claims that never belonged to them as a setoff against Morgan Stanley's deficiency claims *against the Debtors*? Whether Morgan Stanley properly or improperly swept money from Kalkan's personal bank accounts could not give rise to a claim that would belong to the Debtors. The Settlement Order preserved Kalkan's independent claims, if any exist, against Morgan Stanley. (ROA.007728).

**2. The Contingent Nature of Morgan Stanley's Release Does Not Render It Valueless**

Kalkan argues that Morgan Stanley's lien subordination is worthless or improper because it "snaps back" if the Trustee abandons those claims, while the Estate's release is neither contingent nor revocable. Br. at 8. Both arguments misread the Settlement Order while misstating the law governing bankruptcy compromises.

For one, the claimed contradiction does not exist. The release in Paragraph 4 of the Settlement Order expressly carves out the Insurance Claims and the Trustee's standing to pursue them. (ROA.007727–28). The Estates therefore did not release the claims that Paragraph 8 preserves. (ROA.007727–29). Paragraph 8 addresses the priority of Morgan Stanley's liens on any recovery from the carved-out Insurance Claims. (ROA.007729). Paragraph 8 provides that Morgan Stanley's liens will not encumber insurance recoveries to the extent those recoveries fund distributions to general unsecured creditors. (ROA.007729). Morgan Stanley's rights are reserved only if the cases are dismissed, or if the Trustee abandons or elects not to pursue the

Insurance Claims. The Trustee would only abandon and elect not to pursue the Insurance Claims if they ultimately had no value to the Estates which would be contrary to the record established at the hearing on the Motion to Dismiss.

More fundamentally, Kalkan's complaint that the Estates' release is unconditional while Morgan Stanley's concession is conditional asks this Court to judge each provision separately. The law does not require that. A settlement is not evaluated term by term but rather evaluated as an integrated whole to determine whether it falls within the range of reasonableness. *See In re Mirant Corp.*, 348 B.R. 725, 743 (Bankr. N.D. Tex. 2006). Bankruptcy courts need not conduct a mini-trial or precisely value the collateral or claims prior to approving a settlement. *See In re Age Ref., Inc.*, 801 F.3d 530, 540, 544–45 (5th Cir. 2015). They are "not to decide the numerous questions of law and fact raised by appellants," but instead "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *ServiSense.com*, 382 F.3d at 71–72 (citations omitted).

Considered as a whole, the settlement ended costly litigation with little hope of success, paid the Estates $150,000, limited Morgan Stanley to its general unsecured claims, preserved the Insurance Claims, and gave unsecured creditors the opportunity to participate in the insurance recovery rather than all those proceeds going to Morgan Stanley. It did so at a time when the Estates had no cash to fund administration or litigation. (ROA.012316). In exchange, the Estates gave up

speculative claims they could not fund. The Bankruptcy Court reasonably found that exchange fair and equitable and in the best interest of the Estates, and approving it was not an abuse of discretion.

Kalkan's central premise, that consideration given "contingently" is not consideration at all, finds no support in the case law. A secured creditor that keeps some lien rights still gives value when it releases others. *See, e.g.*, *In re Hancock-Nelson Mercantile Co., Inc.*, 95 B.R. 982, 1002 (Bankr. D. Minn. 1989) (holding that this was a genuine *quid pro quo* and that the lenders' retention of some secured rights was beside the point because every compromise involves each side keeping some of what it had). After all, a carve-out from the lender's own collateral to allow distributions to unsecured creditors is with the "quintessential definition of what is in the best interest of any bankruptcy estate": "payment of all claims." *In re 9 Hous. LLC*, 578 B.R. 600, 611 (Bankr. S.D. Tex. 2017) (citation omitted); *accord In re Selander*, 2017 WL 1157101, at *5 (Bankr. W.D. Wash. Mar. 24, 2017).

Without Paragraph 8 of the Settlement Order, any insurance recovery would go first to Morgan Stanley's liens rather than to unsecured creditors. Nor is the condition the "one-way ratchet" Kalkan describes. It depends on events inside this case, not events Morgan Stanley controls: dismissal, or the Trustee's own decision to abandon or not pursue the Insurance Claims. Abandonment requires notice, a hearing, and court approval under 11 U.S.C. § 554(a). The subordination therefore

lasts as long as the Estates pursue the claims for unsecured creditors, which is the only time it matters. The condition fits the purpose of the concession. It does not undermine it.

Kalkan's attack on Morgan Stanley's release thus falls flat.

### 3. Kalkan's Preoccupation with the Amount of the Settlement Payment Misconstrues the True Value of the Settlement Agreement

Kalkan has consistently failed to appreciate the true value of the Settlement Agreement. Initially, Kalkan sought to derail the Settlement Motion by making an unsolicited offer of $175,000 to purchase the Insurance Claims from the Estates, meaning unsecured creditors would receive nothing from the insurance proceeds and Kalkan would retain all of the proceeds. (ROA.008277–28). However, "courts routinely reject the proposition that reviewing courts or fiduciaries are "duty-bound to mechanically accept a bid with the highest dollar amount." *In re Tresha-Mob, LLC*, 2019 WL 1785431, at *2 (Bankr. W.D. Tex. Apr. 3, 2019) (citation omitted). This is because "[w]hile the bid that brings in the most cash often wins, it is 'common knowledge' that the 'highest bid is not always the best bid,' especially if there are 'conditions sufficient to overbalance the difference between the two.'" *Id.* (quotation omitted); *see also In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) (stating that "[a] trustee has the duty to maximize the value of the estate" and recognizing that, depending on the circumstances, accepting a lower bid may be consistent with that duty); 3 Collier on Bankruptcy ¶ 363.02[4] (same). In the Trustee's business

judgment, it was better for unsecured creditors to receive pro rata distributions of potentially millions in insurance proceeds than just the $175,000 total Kalkan offered. (ROA.012331–32).

Taking a slightly different tack, Kalkan now argues that the Settlement Payment is "facially inadequate." Br. at 8. This inadequacy, according to Kalkan, is established by statements made by counsel to the United States Trustee during a hearing on whether to convert the Chapter 11 Cases from chapter 11 to chapter 7. But the transcript of the earlier conversion hearings was not part of the record before the Bankruptcy Court in connection with the Settlement Motion and Kalkan has forfeited any such argument by failing to raise it in the Bankruptcy Court. *Rollins v. Home Depot USA*, 8 F.4th 393, 397–98 (5th Cir. 2021). Even if it had been, however, these offhand remarks are not evidence of the value of the claims against Morgan Stanley.

In ruling on the Settlement Motion, the Bankruptcy Court heard testimony that estimated the insurance proceeds could generate several million dollars in distributions to unsecured creditors, and that the Settlement Payment was vital to the administration of the Estates. It received no credible evidence (beyond Kalkan's argument and conjecture) that the Estates' claims against Morgan Stanley were worth anything close to that amount. There is nothing in the record that justifies disturbing the Settlement Order.

## IV. The Bankruptcy Court Went Out of Its Way to Afford Kalkan Due Process

Kalkan contends that the Settlement Order affects his personal interests and a non-debtor's property "without the process due" and "without findings sufficient to support such extraordinary relief." Br. at 9. The premise is wrong. The Settlement Order grants no extraordinary relief against Kalkan: it releases only estate claims, preserves his direct claims, and imposes no gatekeeper injunction. (ROA.007727–28).

Kalkan received every process due. He had notice of the Settlement Motion and filed the three Kalkan Objections. (ROA.003923–33, 3943–52, 5568–73, 7725). He appeared at two hearings on the Settlement Motion, cross-examined the Trustee, the insurance adjuster, and Morgan Stanley's witness, called the Trustee in his own case, and gave a closing argument. (ROA.008249–50, 8264–72, 8279–90, 8307–09). The Bankruptcy Court found that "[a] fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities." (ROA.007725). It made findings on the record under *Cajun Electric*. (ROA.008320–21). When Kalkan's objection to the gatekeeper provision raised a genuine due process concern, the court sustained it. (ROA.008317–18).

## CONCLUSION

The appeal should be dismissed due to Kalkan's lack of standing and his failure to comply with the Bankruptcy Rules, and the Settlement Order should otherwise be affirmed in all respects.

By: *Aaron J. Power*
**PORTER HEDGES LLP**
Aaron J. Power (TX Bar No. 24058058)
apower@porterhedges.com
Jordan T. Stevens (TX Bar No. 24106467)
jstevens@porterhedges.com
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6295

***ATTORNEYS FOR APPELLEE ALLISON D. BYMAN, CHAPTER 7 TRUSTEE***

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) because, excluding the parts of the document exempted by Rule 8015(g), this document contains 6,572 words.

This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font or larger.

*/s/ Aaron J. Power*
Aaron J. Power

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Brief of Appellee was filed with the Court in electronic format on October 8, 2026, and an electronic copy of the brief was served on the following by email on the same date:

Appellant Dr. Fercan Kalkan – kalkan1@gmail.com

*/s/ Aaron J. Power*
Aaron J. Power